IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 114-121 |
| | ) | |
| BENNIE W. JOHNSON | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

The Indictment alleges Defendant committed wire fraud by converting to personal use revenues from government contracts he owed to business partners who performed the substantive contract work, and by converting investments for which Defendant had promised repayment and exorbitant returns. The Indictment does not charge Defendant with wire fraud, but instead uses the wire fraud allegations as a predicate for three counts of promotional money laundering in violation of 18 U.S.C. § 1956. Defendant moves to dismiss the Indictment, arguing it alleges no more than wire fraud. After considering all briefs and oral arguments on February 10, 2014, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

## I. THE INDICTMENT ALLEGATIONS

Taking all allegations of the Indictment as true, as one must for purposes of the present motion, the facts are as follows. Defendant established Benchris and Associates, Incorporated ("Benchris"), to procure state and federal contracts for construction projects and supplies. (Doc. no. 1 ("Indictment"), ¶ 1.) Benchris obtained certification as a contractor from the United States Small Business Administration 8(a) Business Development Program,

which assists small businesses owned and controlled by people who are socially and economically disadvantaged. (Id. ¶ 2.) Certification in this program "allows 8(a) businesses to form joint ventures and teams to bid on government contracts, enhancing the ability of such business[es] to perform larger prime contracts and overcome the effects of contract bundling (i.e. the combining of two or more contracts together into one large contract)." (Id.) During the period of 2000 to 2011, Defendant engaged in two, distinct forms of fraudulent activity as an officer of Benchris that allowed him to wrongfully convert $1.2 million to his personal use. (Id. ¶¶ 4, 14.)

The first scheme involved larger companies with whom Benchris partnered to work on government contracts. The agreement was that Benchris would bid on government contracts as an 8(a) contractor, the larger partner company would perform the substantive contract work, and Benchris would accept the government payment and transmit the bulk of it to the larger partner, retaining for Benchris only a nominal fee for its involvement. (Id. ¶¶ 6-9.) Benchris entered into such an arrangement with Lifecycle Construction Services ("Lifecycle") headquartered in Fredericksburg, Virginia, with respect to a government demolition contract obligating the government to pay a total of $135,501.01. (Id. ¶ 7.) Lifecycle and Benchris agreed that Lifecycle would perform the demolition and receive $126,000, with Benchris receiving the remainder. (Id. ¶ 9.) As part of the scheme to defraud, Defendant only made a partial payment of $50,000 to Lifecycle and never paid the remaining balance to Lifecycle of $76,000. (Id. ¶ 10.)

The second scheme involved the conversion of investor funds. Defendant induced individuals to make investments in Benchris by promising them repayment in full along with a return on investment of fifteen to twenty percent from profits earned on government

2

contracts. (Id. ¶ 11.) Instead, Defendant utilized the investments to pay the larger partner companies for their share of contract payments. (Id. ¶ 13.) In addition, Defendant repaid investors with contract funds that Benchris owed to larger partner companies. (Id. ¶ 12.)

After describing these wire fraud schemes, the Indictment sets forth the three counts of promotional money laundering, alleging that Defendant used the proceeds of his wire fraud schemes to engage in additional financial transactions for the purpose of promoting the carrying on of his wire fraud schemes. (Id. ¶ 15.) Each count relates to a specific financial transaction alleged to be promotional in nature, set forth in the Indictment in the following table:

| Count | Date | Financial Transaction |
|---|---|---|
| 1 | April 19, 2011 | the delivery of a cashier's check(# 61190) from SRP Federal Credit Union to a person whose initials are R.L., made payable to R.L. in the amount of $8500 |
| 2 | November 19, 2009 | the delivery of a check (#1022) to R.W. Allen, LLC, made payable to R.W. Allen in the amount of $15,087.50 drawn on an account in the name of BENCHRIS and Associates, at Queensborough National Bank and Trust |
| 3 | November 5, 2009 | the delivery of a check (#1015) to a person whose initials are J.C.S. made payable to J.C.S. in the amount of $31,134.38 drawn on an account in the name of BENCHRIS and Associates, at Queensborough National Bank and Trust check |

## II. THE MOTION TO DISMISS

Defendant advances two arguments for dismissal. First, Defendant argues that Count One fails to allege the offense of promotional money laundering because the specified financial transaction has no relationship to the purported wire fraud scheme and, instead,

3

merely concerns Defendant's refund of money to a friend for whom he was unable to purchase tickets to a sporting event. As detailed below, the argument is improper because it misconstrues the Indictment and relies on discovery documents to prove the nature of the transaction. Second, Defendant argues that the Court should dismiss all three promotional money laundering counts because they arise out of the same conduct that forms the basis of the predicate wire fraud allegations. Defendant argues that, when the same conduct constitutes wire fraud and promotional money laundering, the offenses "'merge into the same crime, and the government cannot charge promotional money laundering . . . simply in an effort to garner a more severe sentence." (Doc. no. 23 ("Def's Mot. to Dismiss"), p. 8.) The second argument fails because, as explained below, it is based on the mistaken belief that, when the same conduct violates two criminal laws, a defendant can only be charged with and convicted of the lesser offense.

## III. COUNT ONE OF THE INDICTMENT SATISFIES ALL ELEMENTS OF PROMOTIONAL MONEY LAUNDERING.

Before explaining why Count One sufficiently alleges promotional money laundering, it is best to begin with the liberal pleading standard by which courts determine the sufficiency of indictments, as well as the elements of the promotional money laundering offense. Fed. R. Crim. P. 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that gives notice of the offense to the accused. See United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009); see also United States v. Silverman, 745 F.2d 1386, 1392 (11th Cir. 1984) ("The accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if proved,

4

would establish prima facie the accused's commission of that offense."). The sufficiency of an indictment is determined from its face and is not a high hurdle. See United States v. Baxter, 579 F. App'x 703, 705 (11th Cir. 2014).

Pursuant to 18 U.S.C. § 1956, the elements of the promotional money laundering offense charged in the Indictment are as follows: (1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew the property involved in the transaction represented the proceeds of unlawful activity; (3) the property involved was in fact the proceeds of the specified unlawful activity; and (4) the defendant conducted the financial transaction with the intent to promote the carrying on of the specified unlawful activity. United States v. Jennings, 599 F.3d 1241, 1252 (11th Cir. 2010). The Indictment satisfies all four elements as to Count One. The Indictment describes the predicate wire fraud schemes that constitute the underlying unlawful activity in paragraphs one through fourteen. Paragraph fifteen satisfies all remaining elements of the offense by identifying a specific financial transaction occurring on April 19, 2011, alleging this transaction involved proceeds of the wire fraud schemes, alleging Defendant knew the property involved in this transaction represented proceeds of said schemes, and alleging Defendant conducted the transaction with the intent to promote the carrying on of said schemes.

Defendant argues he could not have intended to promote the wire fraud schemes by engaging in the specified transaction because documents produced by the government show Defendant was merely reimbursing someone who gave him cash to buy tickets for a sporting event. Defendant could not purchase the tickets, and the transaction was merely his return of the ticket money. The problem, of course, is that criminal summary judgment proceedings are not permitted. See, e.g., United States v. Salman, 378 F.3d 1266, 1268-69 (11th Cir.

5

2004) (explaining there is no criminal summary judgment procedure because "it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance.")

Next, Defendant construes paragraph fourteen of the Indictment as a concession by the government that the transaction specified in Count One is purely personal and not made for the purpose of promoting the wire fraud schemes. Paragraph fourteen is found in the wire fraud section of the Indictment, however, and alleges that Defendant, by stealing, converting, and misapplying investor funds and funds obtained from government contracts, was able to "purchase personal items for himself and pay his own living expenses." This paragraph does not describe the financial transaction specified in Count One of the Indictment.

## IV. THE POTENTIAL MERGER PROBLEM DOES NOT WARRANT DISMISSAL.

Defendant moves to dismiss all three counts of the Indictment based on what he perceives to be a critical "merger problem." The essence of Defendant's position is that when identical conduct of a defendant gives rise to two criminal offenses, the two offenses merge and the government cannot charge the defendant with only the more serious offense. (Def.'s Mot. to Dismiss, p. 8.) Here, Defendant argues this problem exists because the Indictment relies on the same conduct for the wire fraud schemes as it does for the promotional money laundering counts. This conclusion is not evident from the face of the Indictment. Instead, the Indictment alleges that Defendant conducted two wire fraud schemes and that, in addition to committing those schemes, he used proceeds from the wire fraud schemes to "promote the carrying on of said" schemes by conducting three financial transactions.

6

The merger problem may still exist, however, because a person may commit promotional money laundering under § 1956 by merely using gross receipts of the criminal enterprise to pay expenses generated by the criminal enterprise. The Indictment does not specify whether any or all of the three transactions involve the use of gross receipts generated by the fraud schemes to pay expenses generated by the fraud schemes. Even assuming that this is the case for some or all of the three counts, the resulting merger problem does not warrant dismissal of the Indictment. To understand why, one must understand the original scope of § 1956, the debate regarding interpretation of § 1956 that occurred in United States v. Santos, 553 U.S. 507 (2008), and Congress's rejection of Santos through amendments of § 1956 in 2009.

At the time of the Santos decision, § 1956 prohibited the promotion of a criminal enterprise through financial transactions involving proceeds of the criminal enterprise, but the statute did not define the term "proceeds." As the Supreme Court explained, the undefined term "proceeds" is ambiguous and could be construed broadly to include gross receipts of the criminal enterprise or narrowly to include only profits of the enterprise. Santos, 553 U.S. at 511, 517. The broad interpretation triggers the merger problem because any financial transaction occurring during the normal course of running a criminal enterprise, such as paying expenses generated by the enterprise itself, would also constitute promotional money laundering. Id. at 517. Accordingly, the identical conduct would give rise to two criminal offenses, with promotional money laundering typically being the offense that carries a more severe punishment. Id.

In Santos, for example, adoption of the broader "gross receipts" definition would have meant that the defendant, accused of operating an illegal lottery in violation of 18 U.S.C. §

7

1955, committed the more serious offense of promotional money laundering by merely paying the winners and employees of his illegal lottery. Id. at 516-17. The Supreme Court issued a fragmented, plurality opinion adopting the restrictive "profits" definition of proceeds, reasoning in part that the ambiguity should be resolved in a manner that avoids the merger problem because Congress likely would not have intended to punish as money laundering the mere payment of expenses necessary to commit the lesser crime of operating an illegal lottery. Id. at 512-17.

Congress disagreed with the holding in Santos and amended § 1956 in 2009 to include a broad definition of "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). As a result of this amendment, Defendant's argument fails. While the Indictment does not specify whether the three financial transactions identified in Counts One to Three involve gross receipts or profits of the alleged wire fraud schemes, the distinction is irrelevant since Congress's broad definition of proceeds encompasses both.

Notably, Defendant's argument would have fared no better even before the 2009 amendment to § 1956 because the Eleventh Circuit narrowly construed the holding in Santos to apply a narrow definition of "proceeds" only in cases involving unlicensed gambling operations. See United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009). The Eleventh Circuit adopted this narrow construction under the well-established rule that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks

v. United States, 430 U.S. 188, 193 (1977).

Citing Santos and ignoring the 2009 amendment to § 1956, Defendant persists in arguing that the merger problem prohibits the government from prosecuting a defendant for promotional money laundering when all he has done is use gross receipts generated by the criminal enterprise to pay expenses generated by the criminal enterprise. Santos confirms the opposite. The plurality in Santos explained that the broader "gross receipts" interpretation of "proceeds" would afford prosecutors "the discretion to charge the lesser lottery offense, the greater money-laundering offense, or both . . . ." Santos, 553 U.S. at 516. Case law is replete with affirmations of the considerable discretion afforded to prosecutors to do exactly that, i.e. charge only the lesser offense, only the greater offense, or both.[1]

For this reason, as four dissenting justices in Santos explained and the plurality never contested, the merger problem is nothing more than a sentencing problem. See id. at 547 (Alito, J., dissenting). The problem is also easily remedied at sentencing because § 1956

---

[1] See, e.g. United States v. Batchelder, 442 U.S. 114, 125 (1979) ("Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced."); United States v. Herring, 993 F.2d 784, 788 (11th Cir. 1993) ("[T]he prosecution has the right to select the statute under which the indictment will be brought."); United States v. Ucciferri, 960 F.2d 953, 954 (11th Cir. 1992) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.") (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). Indeed, the government could have charged Defendant with both money laundering and wire fraud, but chose not to do so. See, e.g., Santos 553 U.S. 507, 509-10 (defendant charged with running an illegal lottery and promotional money laundering); United States v. Esquenazi, 752 F.3d 912, 934-36 (11th Cir.) cert. denied, 135 S. Ct. 293, 190 L. Ed. 2d 141 (2014) (rejecting argument that money laundering convictions merged in the indictment with underlying bribery charges); Tirado v. United States, No. 09-81532-CIV, 2010 WL 5678680, at *10-11 (S.D. Fla. Dec. 3, 2010) *report and recommendation adopted*, No. 09-81532-CIV, 2011 WL 346497 (S.D. Fla. Feb. 1, 2011) (rejecting argument that money laundering convictions merged in the indictment with underlying wire fraud charges).

9

does not have a statutory minimum sentence and thus does not require that the sentencing judge increase the sentence beyond that called for by the lesser offense. Id. Indeed, because the United States Sentencing Guidelines are no longer mandatory, the sentencing judge has the discretion to impose the sentence called for by the lesser offense if justice so requires. Id.

Notably, the problem is even easier to resolve at sentencing here than in Santos. Justice Stevens was concerned in Santos that applying a gross receipts definition of proceeds would lead to a particularly unfair result "because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business." See Santos, 553 U.S. at 527; see also id. at 547 (Alito, J., dissenting). Indeed, the statutory maximum for operating an illegal lottery was five years, while the statutory maximum for promotional money laundering was twenty years. Id. at 527. No such disparity exists here because the statutory maximum for wire fraud and promotional money laundering are both twenty years. See 18 U.S.C. §§ 1343, 1956(a)(1). While not material to the Court's analysis, it is notable that promotional money laundering carries a base offense level of eight under the Sentencing Guidelines while wire fraud carries a base offense level of six. See U.S.S.G. §§ 2B1.1, 2S1.1. The guidelines for both offenses reference the same table for adding levels based on the amount of loss. Id.

Certainly, there remains the potential for prosecutorial abuse, a potential that exists any time Congress empowers a public official with discretion. To curb the potential for abuse, Congress enacted a Sense of Congress when it amended § 1956 to include the broader definition of proceeds in 2009, as follows:

> It is the sense of the Congress that no prosecution of an offense under section 1956 or 1957 of title 18, United States Code, should be undertaken in combination with the prosecution of any other offense, without prior approval of the Attorney General, the Deputy Attorney General, the Assistant Attorney

10

> General in charge of the Criminal Division, a Deputy Assistant Attorney General in the Criminal Division, or the relevant United States Attorney, if the conduct to be charged as "specified unlawful activity" in connection with the offense under section 1956 or 1957 is so closely connected with the conduct to be charged as the other offense that there is no clear delineation between the two offenses.

Fraud Enforcement and Recovery Act of 2009 (FERA), PL 111-21, May 20, 2009, 123 Stat. 1617, 1619. The government advised during oral argument that it complied with this statutory requirement by seeking the advice of representatives within the Attorney General's office and deciding, consistent with the Sense, to forego prosecution of the alleged wire fraud offenses and charge only promotional money laundering.

## V. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**. (Doc. no. 23.)

SO REPORTED and RECOMMENDED this 12th day of March, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA